**INTERNATIONAL PAPER COMPANY,**
Appellant,

v.

**STANDARD INDUSTRIES, INC.,**
Appellee.

No. 9466.

United States Court of Appeals
Tenth Circuit.

Feb. 9, 1968.

───◆───

Richard F. Adams, Kansas City, Mo. (Frank Settle, Fredonia, Kan., Warren E. Slagle and Slagle & Bernard, Kansas City, Mo., were with him on the brief), for appellant.

James L. Kincaid, Tulsa, Okl. (Joe M. Holliman and Frederic Dorwart, Tulsa, Okl., were with him on the brief), for appellee.

Before WOODBURY*, LEWIS and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

This appeal is taken from a judgment entered in the District Court for the Northern District of Oklahoma on a jury verdict in favor of the defendant on its counterclaim in an action in which both parties alleged breach of contract. The single appellate issue relates to claimed error in the ruling of the trial court in evidentiary matters.

In May 1959, appellant, International, purchased from appellee, Standard, some 433 acres of land in Tulsa County, Oklahoma, for the purpose of developing residential sites in conjunction with other purchases of contingent lands. By separate instrument Standard agreed to straighten the channel of Mingo Creek upon that portion of the channel that crossed the lands sold by it. This subject contract contained the following pertinent recitals and conditions:

"WHEREAS, Contractor has proposed to do and perform such channel straightening work across the aforesaid lands of the Owner in accordance with the plans and specifications therefor prepared by the engineering firm of Owen, Mansur & Steele, hereinafter referred to as the 'ENGINEER', subject to the terms and conditions as hereinafter set forth.

"1. Contractor agrees to furnish all labor, tools, machinery, equipment and supplies necessary for the complete straightening of Mingo Creek Channel across the lands above described in complete accordance with the plans and/or drawings and specifications of the Engineer, all in good and workmanlike manner, and to complete the same within a period of ——— working days after commencement of such work. It is agreed that Owner shall give Contractor not less than ——— days notice in writing of the date upon which such work is to be commenced. A copy of the drawings of the Engineer applicable to the work is attached hereto as Exhibit A and by reference made a part hereof."

Attached to the contract was a drawing prepared by the engineering firm, apparently in 1956 and in conjunction with a flood control analysis, showing a proposed contour rechanneling of Mingo Creek. The engineering firm had also prepared and submitted to Standard a set of "outline specifications" but these were not attached to the 1959 contract.

International's development plans progressed very slowly and it was not until February 1964 that Standard was called upon to perform. In June 1963, the engineer had prepared detailed plans and specifications for the parties that pertained to the entire course of Mingo Creek over International's land and which were considered by the parties, at least in part, to determine whether an economy could be effected by the letting of a single contract for the entire project and which would include work upon lands not included in Standard's contract. This potential did not materialize and Standard, responding to International's demand of February 1964, began work. During the progress of the work still

───

* Of the First Circuit, sitting by designation.

another set of detailed plans and specifications was given Standard, this time limited to the specific geographical area of the original contract. Standard ceased work when the demands of these specifications clashed with what Standard considered its contractual obligations.

By its complaint, International alleged a breach of contract that included the engineer's plans and specifications of June 1963; in its counterclaim Standard alleged a breach of contract that included the "outline specifications" that were in existence before the execution of the contract in 1959. At pre-trial the basic issue of the case was very aptly framed thus:

"1. What plans, specifications and drawings are applicable to the work to be performed under the contract in suit?"

From the cited portions of the 1959 contract, with only a contour map attached, it seems apparent that such contract was not fully integrated and that parol evidence would be competent to prove the full contractual intent of the parties in their reference to performance " * * * in complete accordance with the plans and/or drawings and specifications of the Engineer. * * * " Appellant called as its primary witness the engineer, Steele, who had participated in the contract negotiations of the parties and had prepared the "outline specifications" and both sets of later detailed specifications. An immediate controversy arose between counsel as to the extent the witness could competently testify upon varying subjects and the trial court was obliged to rule many, many times on objections. Claimed error in these rulings premises this appeal. We cannot, obviously, discuss each ruling in detail and must limit our consideration to a determination of whether rulings of the court adverse to appellant improperly prevented a full and fair consideration of its theory of the case by the jury.

By questions propounded to the witness Steele to which objections were sustained, and by a formal offer of proof which was rejected by the court, appellant attempted to prove, among other things, the totality of circumstances that existed during the contract negotiations as material to probe the intent of the parties, the knowledge of the parties and the engineer of the physical aspects of the subject lands at such time, the function of "outline specifications" both as intended in this case and generally, the fact that the June 1963 specifications were consistent with the "outline specifications" and that the 1964 specifications did not vary materially therefrom. For examples the following offers of proof were rejected:

"Offer to prove by the witness Steele that at the time the contract was entered into and signed by the parties it was impossible to prepare detailed plans and specifications, and further that all the parties knew the detailed plans and specifications were to be made at a later date."

"Offer to prove by the witness Steele that the requirements that would be made as engineer named in the contract in suit, under the terms of the contract and under the language of the outline specifications, would be the same requirements as are set forth in greater detail and specificity in the plans and specifications later prepared and submitted to the defendant."

The reasoning of the trial court premising its basic rulings concerning the competency of much of Steele's testimony seems reflected in this statement:

"THE COURT: Yes, the Court will sustain the objection and in that connection, from a casual reading of the contract here, after your second 'Whereas,' the contract says 'Contractor has proposed to do and perform certain channel straightening work across the aforesaid land of the Owner in accordance with the plans and specifications therefor prepared.'

"Which all that means is that the plans and specifications therefor prepared by the Engineer are the plans attached to the contract of May 19, 1959; could mean nothing else."

■ We deem this premise to be erroneous. The "outline specifications" were not attached [1] to the contract and both the fact that and the extent to which they constituted a part of the contractual agreement had to be proved by parol evidence. Appellee urges that the integration of the contract was completed by proof of and reference to the outline but such a claim presupposes such to be the intent of the parties. Appellant attempted to prove that the outline specifications did not finalize the intent of the parties. This was proper and parol evidence was a competent vehicle of proof. The contract with the outline specifications was integrated, as a matter of law, only to the extent that, if as a matter of fact detailed specifications were contemplated by the parties, the detailed specifications would have to complete the contract and not abort the outline specifications.

■■ Appellee points out that notwithstanding appellant's present protests, some evidence in accord with appellant's position is contained in the record over appellee's objections. And this is true. The witness Steele was allowed to testify that an "outline specification is exactly what it says it is. It's an outline of something that's going to follow." Similarly, the June 1963 specifications were admitted in evidence and the witness on direct examination was allowed the vague conclusionary statement that the specifications were in accord with the outline. Beyond that the court ruled that the documents spoke for themselves although extensive cross-examination on the subject was made by counsel.[2] Appellee now asserts that the court's adverse rulings allowing this evidence were error, but that such error was adduced by appellant's persistence and thus justified the admission of much evidence on appellee's defense case that was denied by the court on appellant's presentation. We completely agree that a party cannot lead a court into error and then complain of that error on a civil appeal. But we see no proper application of that rule or any of its offsprings to the case at bar. The court's error was in the exclusion of evidence, not the inclusion.

■ Appellant presented this case to this court upon an argumentative brief containing a dichotomy that the court erred in adverse evidentiary rulings on its case, or in the alternative, that the court erred in contradictory rulings on appellee's presentation. Thirty-two separate errors were claimed and supported only by reference to the original printed abstract of record and a mechanically reproduced supplemental appendix. In most instances such references gave the court no guide to whether the rulings were in error or, if so, whether prejudice resulted. We consider the abstract of record to have been a useless appellate tool and, as a consequence, the court and each member thereof has had to resort to the single copy of the original record in order to give consideration to the case. We accordingly deem it appropriate to award no costs.

The case is reversed with directions to grant a new trial. No costs are awarded.

1. Counsel for appellee repeatedly referred to the "outline specifications" as attached to the contract and used the term "contract" to include the executed document and the then existent outline specifications. This was, of course, consistent with his theory of the case but begs the ultimate question.

2. The witness was both a factual and expert witness and this understandably added greatly to the trial court's burden in ruling on the competency of testimony. Generally, an expert should be allowed to explain the meaning of technical terms contained within technical documents such as construction plans and specifications. The expression of the witness' subjective intent in preparing the various specifications was very properly ruled out by the court.